### JAMES BLANNETT V. STATE OF OHIO.

ABSENCE OF INTENTION TO USE FORCE.

Where it does not appear, in a trial for rape, that the accused intended to use whatever force was necessary to accomplish his purpose, it is a mere indecent assault and a conviction for rape cannot be sustained.

ERROR to the Court of Common Pleas of Huron county.

SCRIBNER, J. (orally.)

At the October term, 1893, of the court of common pleas of Huron county, one James Blannett was indicted by the grand jury charged with having assaulted one Anna Patterson with intent to commit a rape upon her person.

At the same term of the court the accused was put upon his trial, and the jury returned a verdict finding him guilty of the offense for which he had been indicted. A motion for a new trial was interposed, which was overruled, and thereupon the court sentenced him to imprisonment in the penitentiary of the state for the term of thirteen months.

The proceeding in error now under consideration, was brought in his behalf for the purpose of reversing this judgment of the court of common pleas.

The transcript of the journal entries filed in the case, does not show, at least not in proper form and manner, that the accused had ever been indicted by the grand jury. The original indictment was filed with the papers in the case, and is made part of the record. The usual endorsement appears upon it, but the record simply sets out, after giving the title of the case, that the following entries and judgment are truly copied from the journals of said court, to-wit:

"October term, to-wit, November 20, 1893. This day came the prosecuting attorney on behalf of the state of Ohio, and the defendant being brought into court, in custody of the sheriff, and arraigned on said indictment, for plea thereto says he is not guilty, and puts himself upon the county, and the prosecuting attorney doth the like."

"And it appearing that said defendant is in indigent circumstances, and unable to employ counsel, the court, at his request, assigns F. H. Jones as counsel to defendant."

It should appear, as we understand the practice, by the journal entry showing the proceedings of the court, that upon a day named, the grand jury returned an indictment endorsed as follows—setting out the endorsement appearing upon it. We have not, however, purposed to pass upon the sufficiency of the record in this regard, but proceed at once to the principal question which arises upon the record. I might add, that the bill of exceptions taken in the case and made part of the record shows this:

"And this was all the evidence offered by either party to the cause."

"Thereupon the case was submitted to the jury by the court, and the jury having found in favor of the *defendant* (instead of the *plaintiff*), the plaintiff, within three days after the verdict made a motion for a new trial for reasons set forth therein, but the court overruled the same, and rendered judgment upon the verdict, to which verdict and judgment and the overruling of the motion for a new trial, the defendant then and there excepted, and tenders this his bill of exceptions."

Of course, this was an inadvertence, escaping attention no doubt, before the signing of the bill of exceptions, but the journal entry, which must control in this matter, is entirely correct. It shows that a verdict of guilty was returned against the accused, not a verdict for the defendant; and it shows that the proceedings thereafter were by the defendant to set aside the verdict, and not by the

state. I mention this matter merely by way of suggestion for counsel, both for the state and the accused, as to the care that may be necessary in making up bills of exceptions.

The principal question arising in the case is one of fact. It is as to whether or not the verdict of the jury is sustained by sufficient evidence. The indictment charges the accused with having assaulted the prosecuting witness, with intent to commit a rape upon her person. The testimony fully warrants the verdict of the jury in so far as it may be held to find the accused guilty of the assault, and even of an indecent assault, upon the person of Mrs. Patterson. But the main and important question arising upon the facts, is as to whether or not the evidence warrants the verdict of the jury in finding that this assault was made with intent to commit a rape upon the person of the prosecuting witness Mrs. Patterson.

The prosecuting witness, upon the trial, made this statement as to the facts connected with the transaction of which she complains:

"On the evening of October 7th, last, I saw him. I first saw him (the defendant) after I turned off from Main street on to Milan street. I again saw him just after I crossed the railroad track on Marshall street. I had just got past a big tree below the track when I heard some one running behind me. I turned out to let him pass, but he put his arm around me and grabbed my left arm and raised my dress. I struggled and pushed him away, and he looked at me an instant and pulled his cap down over his face, and ran north and crossed Rule street. Some one was coming, and I went on home. It was ten or fifteen minutes after six in the evening, old time. It was dark under the tree. There was good foliage on it."

Further on, she says in cross-examination:

"I had got just past the tree when he came up. When I crossed the railroad I saw a man sitting in the flag house. It is quite a little way from the track to the tree. After I came off from Main street, I met Blannett by the old blacksmith-shop on Milan street, and I knew him when I passed him. I had seen him a great many times before. He came up behind me under the tree. He took hold of my arms, and lifted my clothes as high as my knees. I pushed him away, and said, 'Let me alone, go away;' and he ran off. That was about the way of it. He pulled his cap down and said, 'Humph,' and ran off. Nothing further was said or done."

She further said in regard to the transaction:

"It was not more than a minute that he was scuffling under the tree. I got policeman Morrison up town. I knew this boy by the name of Nin Holmes. I said at Holmes' house, after I had talked with the boy, that I was mistaken."

There was some testimony tending to show that the woman was somewhat uncertain in her recollection as to the identity of the accused as the person who had assaulted her. The testimony indicates that she was at first disposed to charge another young man with the offense of seizing her; but her testimony is corroborated by that of other witnesses who were in the neighborhood, who testified that they saw the young man, Blannett, in that vicinity about the time that Mrs. Patterson was passing along, not very far distant from her, so that so far as the suggestion as to her being mistaken in the identity of the person was concerned, we think the jury were fully warranted in finding from the testimony that the accused was the party who had committed the assault.

The proposition of law, stated in the brief of the counsel for plaintiffs in error, as to the character of the evidence required to convict upon a charge of this kind, we find to be well supported by the authorities.

The evidence, says the Supreme Court of Iowa, must show not only that the accused had a purpose to have sexual intercourse with the prosecutrix, but he must have intended also to use whatever degree of force might be necessary to overcome her resistance, to accomplish his purpose. That is, the state must not only establish by proof to the extent required by the rule in criminal cases, the fact that the assault was made by the accused, but also that it was made with the intent to use whatever degree of force might be necessary to enable him

to overcome her resistance and accomplish his purpose.   47 Iowa, 151;  68 Iowa, 397;  73 Iowa, 258;  28 Neb., 814;  7 Southern Reporter, 326.

In the present case, the statement of the complaining witness is, as I have already read, that when the person who assaulted her came running behind her:

" I turned out to let him pass, but he put his arms around me and grabbed my left arm and raised my dress.  I struggled and pushed him away.  He looked at me, and instantly pulled his cap down over his face and ran north across Main street."

He put his arm around her and grabbed her arm and raised her dress.   In another place she says he raised her dress to her knees, or above them.   He looked at her, pulled his cap down over his eyes and ran away.   She says:

"He came up behind me under the tree and took hold of my arm, and lifted my dress as high as my knees.  I pushed him away and said, 'let me alone.  Go away'; and he ran off. That was all there was about it."

The question is, did the testmony of the state come up to the rule required in cases of this kind?   Did the conduct of this young man, at the time he committed the assault, at the time of inflicting this wrong, show that he intended to use whatever force might be necessary to overcome any resistance upon her part, to accomplish the purpose to have sexual intercourse with her on that occasion?

He made no attempt other than what I have stated; he threw his arms around her, and raised her dress to her knees. He said nothing to her; she bade him go away, and he left her immediately without saying a word to her except that he made some sort of an exclamation.   He left her without any further disturbance.

Undoubtedly a case was made which would warrant the infliction of the full punishment provided by the law for making an indecent assault on a woman upon the streets in the night time, but it appears to us that the testimony falls far short of establishing that there was any purpose upon the part of the young man to use force, to oppose force to force, if she resisted him, in order to accomplish his purpose.   When she bid him go away, he left; he did not persist.   He did not attempt to compel submission to his wishes.   He made no effort other than what I have stated, to overcome such resistance as she offered to his approaches.

Without dwelling upon the case further, it is sufficient to say that in our judgment, the verdict of the jury finding the young man guilty of an attempt to commit rape is not sustained by sufficient evidence, and for that reason the judgment must be reversed, the verdict set aside, and the case remanded for a new trial.

*F. H. Jones*, for plaintiff in error.

*J. R. McKnight*, prosecuting attorney.